B. Fourth Amendment
In moving to dismiss the Fourth Amendment claim asserted in Count II, Jenkins contends that such claim is barred by the doctrine of qualified immunity. For the following reasons, the court agrees.
The doctrine of qualified immunity shields government officials from *723 civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[5] Mullenix v. Luna, --- U.S. ----, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ). "To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018) ; see also Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ). An official is entitled to qualified immunity if either prong is not satisfied. Pearson, 555 U.S. at 244-25, 129 S.Ct. 808.
The Supreme Court has held that lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236, 129 S.Ct. 808. The Court has urged lower courts to "think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.' " al-Kidd, 563 U.S. at 735, 131 S.Ct. 2074 (quoting Pearson, 555 U.S. at 236-37, 129 S.Ct. 808 ). Therefore, addressing the second prong before the first is especially appropriate in cases where "a court will rather quickly and easily decide that there was no violation of clearly established law." Pearson, 555 U.S. at 239, 129 S.Ct. 808. Because this is one of those cases, the court will proceed directly to the second prong.
Under the second prong, a government official is entitled to qualified immunity if the right at issue was not "clearly established at the time of the challenged conduct." al-Kidd, 563 U.S. at 735, 131 S.Ct. 2074. The Supreme Court has explained that a constitutional right is clearly established where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.' " Reichle v. Howards, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (quoting al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074 ). Thus, "if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Martin v. St. Mary's Dep't of Soc. Servs., 346 F.3d 502, 505 (4th Cir. 2003) (internal quotation marks omitted); see also Pearson, 555 U.S. at 244, 129 S.Ct. 808 ("The *724 principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.").
The Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality." al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074. Instead, the court must determine "whether the violative nature of particular conduct is clearly established." Id. "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix, 136 S. Ct. at 308 (internal quotation marks omitted). The Supreme Court has recognized that "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that [it] is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." Id. (internal quotation marks omitted); see also al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074 (noting that the "general proposition ... that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established"); City & Cty. of San Francisco v. Sheehan, --- U.S. ----, 135 S. Ct. 1765, 1776, 191 L.Ed.2d 856 (2015) (emphasizing that "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). If the defendant's actions "were not clearly unlawful when performed," he is entitled to qualified immunity. Francis v. Giacomelli, 588 F.3d 186, 196 (4th Cir. 2009).
In this case, Rios contends that at the time of his detention, "it was clearly established that local law enforcement in Virginia lack[ ] authority to effectuate civil immigration arrests absent a 287(g) agreement," and that local law enforcement officers violate the Fourth Amendment when they detain an individual solely based on an ICE detainer and administrative warrant. Pl.'s Br. in Opp'n 26, Dkt. No. 14. To support these arguments, Rios cites to two cases: Arizona v. United States, 567 U.S. 387, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012) ; and Santos v. Frederick County Board of Commissioners, 725 F.3d. 451 (4th Cir. 2013).[6] For the following reasons, the court concludes that neither of the cited decisions placed it beyond debate that Jenkins' actions violated the Fourth Amendment, and that a reasonable official in Jenkins' position could have believed that Rios' continued detention at the request of ICE was lawful.
Arizona was a preemption case decided under the Supremacy Clause of the *725 United States Constitution. 567 U.S. at 399, 132 S.Ct. 2492. The Supreme Court ultimately held that federal law preempted a provision of an Arizona statute that authorized state officers to independently arrest a person, without a warrant, if the officer had probable cause to believe that the person had committed an offense that made him removable from the United States. 567 U.S. at 410, 132 S.Ct. 2492. In defense of the statute, the State of Arizona emphasized that 8 U.S.C. § 1357(g)(10)(B) permits state officers to "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." Id. However, the Supreme Court found the State's reliance on this provision unpersuasive. Id. The Court recognized that there "may be some ambiguity as to what constitutes cooperation" under this provision, but concluded that "no coherent understanding of [the term 'cooperate'] would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." Id. at 410, 132 S.Ct. 2492. The Court noted that DHS had provided "examples of what would constitute cooperation under federal law," and that such examples include "situations where States ... provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities." Id. The Court found that the "unilateral state action to detain authorized by [the Arizona statute went] far beyond these measures, defeating any need for cooperation." Id.
As the foregoing summary demonstrates, Arizona addressed the viability of "unilateral arrests by state law enforcement officers-arrests for immigration offenses made without a request, approval, or other instruction from the federal government." Tenorio-Serrano v. Driscoll, 324 F. Supp. 3d 1053, 1065 (D. Ariz. 2018). The decision plainly indicates that such arrests are not authorized under § 1357(g)(10). See Santos, 725 F.3d at 466 (observing that Arizona "makes clear that under Section 1357(g)(10) local law enforcement officers cannot arrest aliens for civil immigration violations absent, at a minimum, direction or authorization by federal officials."). Significantly, however, the instant case does not involve a state or local law enforcement officer's "unilateral decision ... to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." Arizona, 567 U.S. at 410, 132 S.Ct. 2492. Instead, the complaint makes clear that the plaintiff was detained upon receipt of a "request from federal immigration authorities" in the form of an immigration detainer and administrative warrant. Compl. ¶¶ 1, 3. Contrary to the plaintiff's assertion, the Supreme Court's decision in Arizona does not suggest, much less clearly establish, that a written 287(g) agreement is required in order for a state or local law enforcement official to lawfully detain a removable alien at the request of ICE. Nor does it otherwise make clear that compliance with ICE detainers and administrative warrants falls outside the scope of permissible "cooperat[ion]" with "detention" under § 1357(g)(10)(B). Instead, the Arizona decision can be read to suggest that the challenged conduct in this case-detaining an individual in accordance with an ICE detainer request and administrative warrant-"w[as] not unilateral and thus, did not exceed the scope" of Jenkins' authority to cooperate with federal immigration enforcement efforts. United States v. Ovando-Garzo, 752 F.3d 1161, 1164 (8th Cir. 2014) (citing Arizona, supra ); see also City of El-Cenizo v. Texas, 890 F.3d 164, 189 (5th Cir. 2018) (observing that an ICE detainer request is the type of "federal *726 direction" that was missing in Arizona ). Thus, the Supreme Court's decision did not clearly establish the unconstitutionality of the detention at issue in this case.
The same is true for the Fourth Circuit's decision in Santos v. Frederick County Board of Commissioners. In that case, the plaintiff alleged that local deputies violated her Fourth Amendment rights by seizing and arresting her based on an outstanding civil warrant for removal issued by ICE. 725 F.3d at 457, 463. At the time of the plaintiff's seizure, "the deputies' only basis for detaining Santos was the civil ICE warrant" reported by dispatch. Id. at 465. The deputies were not authorized to engage in immigration law enforcement pursuant to a 287(g) agreement, and they had not yet confirmed that the warrant was active. Id. at 465-66. Although ICE ultimately requested that Santos be detained on its behalf, the "request ... came fully forty-five minutes after Santos had already been arrested." Id. at 466. Therefore, it was "undisputed that the deputies' initial seizure of Santos was not directed or authorized by ICE." Id. Applying Arizona, the Fourth Circuit held that, "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law." Id. at 465. Based on the facts presented, the Court concluded that "the deputies violated Santos's rights under the Fourth Amendment when they seized her after learning that she was the subject of a civil immigration warrant and absent ICE's express authorization or direction." Id. at 468. "Thus, Santos makes clear that when, absent federal direction or authorization, a state or local officer detains or arrests someone based solely on a civil immigration violation, the officer violates the individual's Fourth Amendment right to be free from unreasonable searches and seizures." Sanchez v. Sessions, 885 F.3d 782, 789 (4th Cir. 2018).
The facts of this case are readily distinguishable from those in Santos. Jenkins did not detain Rios based on a suspected civil immigration violation before communicating with federal authorities. Instead, Jenkins held Rios for up to 48 additional hours pursuant to the immigration detainer and administrative warrant issued by ICE. As indicated above, the detainer specifically requested that Jenkins maintain custody of Rios for an additional 48 hours beyond the time when he would otherwise have been released from the sheriff's custody. And unlike Santos, Jenkins received the ICE detainer and administrative warrant long before the plaintiff's detention was temporarily extended. While Rios argues that the detainer is "merely a request" and therefore "does not constitute 'ICE's express authorization or direction' within the meaning of Santos," this argument finds no support in the Fourth Circuit's decision. Rather than faulting the form of the request from ICE, the Fourth Circuit took issue with the timing of it-namely, the fact that the officers detained Santos before receiving any communication or direction from ICE:
Although there may be no dispute as to whether ICE directed the deputies to detain Santos at some point, the key issue for our purposes is when ICE directed the deputies to detain her. We conclude that the deputies seized Santos when Deputy Openshaw told her to remain seated-after they had learned of the outstanding ICE warrant but before dispatch confirmed with ICE that the warrant was active. Indeed, ICE's request that Santos be detained on ICE's behalf came fully forty-five minutes after Santos had already been arrested. Therefore, it is undisputed that the deputies'
*727 initial seizure of Santos was not directed or authorized by ICE.
Santos, 725 F.3d at 466 (emphasis in original); see also City of El Cenizo, 890 F.3d at 189 (observing that the seizure in Santos violated the Fourth Amendment because "there was no federal request for assistance before the seizure"). The Court in no way suggested that when a state or local law enforcement officer detains someone after being requested to do so by ICE, the officer could violate the Fourth Amendment prohibition against unreasonable seizures. Thus, the Fourth Circuit's decision in Santos did not put Jenkins on notice that detaining the plaintiff under the circumstances presented here would violate the plaintiff's constitutional rights.
Rios does not cite, and the court has not found, any other preexisting decisions from the Fourth Circuit or its sister circuits which clearly established the unlawfulness of Jenkins' actions. See Santos, 725 F.3d at 468 (emphasizing that the right at issue "must have been clearly established at the time an official engaged in a challenged action") (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). Although the Third Circuit had determined that ICE detainers are "permissive," rather than "mandatory," Galarza v. Szalczyk, 745 F.3d 634, 642 n.9 (3d Cir. 2014), no circuit had held that it would violate the Fourth Amendment to comply with an ICE detainer and administrative warrant. The same is true today. The court recognizes that some district courts have recently determined that § 1357(g)(10) should not be "read to allow local law enforcement to arrest individuals for civil immigration violations at the request of ICE,"[7] and that holding someone pursuant to an ICE detainer, without separate probable cause to believe that the person has committed a crime, "gives rise to a Fourth Amendment claim against the local law enforcement." Creedle v. Miami-Dade Cty., 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018). However, other district courts have held to the contrary. See, e.g., Lopez-Lopez, 321 F. Supp. 3d at 801 ("Plaintiff has not presented a plausible Fourth Amendment claim against Allegan County as a matter of law. ICE issued a facially valid administrative warrant for his arrest, based on a determination that there was probable cause to believe that he was removable. Then, ICE requested that the localities detain Aaron through the use of an I-247 detainer-which also recited the basis for probable cause. Allegan County cooperated by complying with the federal government's request (as allowed pursuant to § 1357(g)(10) ) 'by providing operational support' by holding Aaron until ICE could take custody of him the following day. Based on this record, with all inferences to Aaron, Allegan County did not run afoul of the Fourth Amendment prohibition against unreasonable seizures."). Thus, even now, it cannot be said that the constitutional and statutory questions at issue in this case are "beyond debate." al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074 ; see also *728 Gates v. Khokhar, 884 F.3d 1290, 1303 (11th Cir. 2018) ("That judges disagree about a constitutional issue is itself evidence that a right is insufficiently clearly established for purposes of denying qualified immunity.") (citing Wilson v. Layne, 526 U.S. 603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ).
In sum, the court is convinced that Jenkins did not violate clearly established federal law by detaining Rios for an additional 48 hours pursuant to the ICE detainer and administrative warrant. At the time of the plaintiff's detention, existing precedent suggested that, "[e]ven in the absence of a written agreement," local law enforcement officials may cooperate with ICE in the detention or removal of aliens not lawfully present in the United States, Santos, 725 F.3d at 464, when such cooperation is expressly "request[ed]" or authorized by ICE, Arizona, 567 U.S. at 410, 132 S.Ct. 2492 ; see also Santos, 725 F.3d at 465-66. In this case, the ICE detainer specifically requested that the Jail hold Rios for up to 48 additional hours after he would otherwise be released, and both the detainer and the administrative warrant attested to probable cause of removability. Consequently, Jenkins had no reason to believe that complying with the 48-hour detainer request would violate the Fourth Amendment prohibition against unreasonable seizures. Because existing precedent "did not put [the sheriff] on notice that his conduct would be clearly unlawful, [dismissal] based on qualified immunity is appropriate." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (emphasis added). Thus, Jenkins' motion will be granted with respect to Count II.[8]
II. Claim under state law
In Count III of the complaint, Rios claims that he was falsely imprisoned in violation of Virginia law. Having dismissed both federal claims, the court declines to exercise supplemental jurisdiction over Count III, and will dismiss that count without prejudice. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("When ... the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); Banks v. Gore, 738 F. App'x 766, 773 (4th Cir. 2018) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.").
Conclusion
For the reasons stated, the court will grant the defendant's motion with respect to the plaintiff's claims under 42 U.S.C. § 1983. The remaining claims under state law will be dismissed without prejudice.
FINAL ORDER
For the reasons stated in the accompanying memorandum opinion, it is hereby
ORDERED
as follows:
*729 1. The plaintiff's motion for leave to file supplemental authority (Dkt. No. 40) is GRANTED ;
2. The defendants' motion to dismiss (Dkt. No. 6) is GRANTED as to the plaintiff's claims under 42 U.S.C. § 1983 ;
3. The plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c) ; and
4. This action shall be STRICKEN from the active docket of the court.

Qualified immunity applies to claims for monetary relief against officials in their individual capacities, but is not a defense against claims for declaratory or injunctive relief. Wall v. Wade, 741 F.3d 492, 498 n.9 (4th Cir. 2014). During the hearing on the defendant's motion, the plaintiff made clear that he was only seeking relief in the form of damages. To the extent that the complaint also requested a judgment declaring that it was unlawful for the defendant to detain the plaintiff at the request of ICE in the absence of a 287(g) agreement, such relief is unavailable. See Corliss v. O'Brien, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that one party is liable to another."); see also Williams v. City of Cleveland, 907 F.3d 924, 933 (6th Cir. 2018) (holding that the plaintiff did not have standing to request declaratory relief since she was no longer in the defendant's custody at the time the action was filed and the particular policy at issue was no longer in place).

Rios also submits that his position finds support in letter opinions issued by the Attorney General of Virginia. However, such opinions are "not binding" in state or federal court. Twietmeyer v. City of Hampton, 255 Va. 387, 497 S.E.2d 858, 861 (1998) ; City of Va. Beach v. Va. Restaurant Ass'n, 231 Va. 130, 341 S.E.2d 198, 200 (1986). Accordingly they "cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 n.1 (4th Cir. 2017) ; see also Feminist Majority Found. v. Hurley, 911 F.3d 674, 706 n.18 (4th Cir. 2018) (declining to consider a nonbinding unpublished opinion from the United States Court of Appeals for the Sixth Circuit in determining whether particular conduct violated clearly established law).

District courts that have narrowly construed § 1357(g)(10) have reasoned that "if 'otherwise cooperate' ... were read to allow local law enforcement to arrest individuals for civil immigration violations at the request of ICE, the training, supervision and certification pursuant to a formal agreement between DHS and state officers described in the remaining provisions of Section 1357(g) would be rendered meaningless." Creedle v. Miami-Dade Cty., 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018) ; see also Lopez-Aguilar v. Marion Cty. Sheriff's Dep't, 296 F. Supp. 3d 959, 975 (S.D. Ind. 2017) (agreeing with the proposition that § 1357(g)(10) cannot be read to authorize "free-floating state-local cooperation ... without tending to nullify the requirement of federal 'training, certification, and supervision' otherwise established by Section 1357(g)") (citations omitted).

In light of the foregoing analysis, the court finds it unnecessary to address the defendant's remaining challenges to the viability of the constitutional claims asserted under § 1983.