412

782 S.E.2d 757

Francis ACKERMAN, et al., Appellants,

v.

SOUTH CAROLINA DEPARTMENT OF
CORRECTIONS, Respondent.

Appellate Case No. 2012–210588.
No. 5379.

Court of Appeals of South Carolina.

Heard Oct. 20, 2015.
Decided Feb. 10, 2016.
Rehearing Denied March 24, 2016.

See also 372 S.C. 255, 641 S.E.2d 885.

Douglas H. Westbrook, of Charleston, for appellants.

Lake Eric Summers, of Malone Thompson Summers & Ott, LLC, of Columbia, for respondent.

GEATHERS, J.

Appellants (Inmates), 196 current or former inmates participating in a Prison Industries service project operated by Respondent South Carolina Department of Corrections (SCDC), challenge an order of the South Carolina Administrative Law Court (ALC) upholding SCDC's denial of Inmates' grievances. Inmates argue their grievances invoking the Prevailing Wage Statute[1] were not subject to SCDC's fifteen-day filing deadline because these grievances concerned SCDC policy rather than an "incident." We reverse and remand for consideration of Inmates' grievances on the merits.

## FACTS/PROCEDURAL HISTORY

In 1995, our legislature enacted section 24-3-430 of the South Carolina Code (2007) to authorize the expansion of the Prison Industries program into the private sector. This expansion allowed qualified private entities to use inmate labor but required the wages for participating inmates to be no less than "the prevailing wage for work of [a] similar nature in the

---

1. S.C.Code Ann. § 24-3-430(D) (2007). Section 24-3-430(D) provides, "No inmate participating in the [Prison Industries] program may earn less than the prevailing wage for work of [a] similar nature in the private sector."

private sector." Act No. 7, 1995 S.C. Acts 78. Section 24–3–430 became effective on July 1, 1995. *Id.* at 102. Subsequently, on September 30, 1998, SCDC entered into a contract with Williams Technologies, Inc. (WTI) for the employment of SCDC inmates on the premises of Lieber Correctional Institution (Lieber) in WTI's business of "disassembly and/or remanufacturing of its product lines at [Lieber]." The cover page for the contract document is entitled "Williams Technology Transmissions Service Contract."

The contract's "Scope of Work" provision states, in pertinent part, "Prison Industry inmates under the general oversight of SCDC will disassemble and/or remanufacture [WTI's] product lines according to engineering design and manufacturing specifications developed and provided by [WTI]. . . ." The contract also provides, "For all purposes, inmates shall be considered to be employees of SCDC."

With regard to payment for services, the contract requires WTI to pay SCDC "$4.00 per hour per inmate for work performed[,] including training hours and hours in excess of the inmate's normal shift." The contract's cover page highlights the contract's "Requirements/Specifications," which include "Wage Rate: $4.00 per hour/per inmate; $.35/[hour] base for inmates."

On January 11, 2001, Inmate Darrell Williams filed a "Step 1" Inmate Grievance Form requesting SCDC to pay him the prevailing wage for his labor. SCDC's Inmate Grievance System Policy, designated as Policy GA–01.12, provides for formal review of inmate complaints in two steps. A Step 1 grievance is evaluated by the prison's Warden, and any appeal from the Warden's decision to the "responsible official," is designated as "Step 2." The responsible official must render a decision on the appeal within sixty days, and this decision constitutes SCDC's final response in the matter.

Lieber's Warden denied Williams' Step 1 grievance without addressing the Prevailing Wage Statute, stating, in pertinent part: "Prison Industries does not fall under the minimum wage federal guidelines. Your inmate wages are determined by the Division of Budget & Finance[.] Therefore[,] your requested action cannot be honored at this time." Williams then filed a Step 2 Grievance Form on June 26, 2001, complaining about unsafe working conditions and seeking the

prevailing wage for his labor as well as a correction of SCDC's deductions from his wages.

While Williams' Step 2 grievance was pending, the legislature enacted the first of a series of yearly budget provisos, effective for the fiscal year beginning July 1, 2001, permitting SCDC to pay participating inmates less than the prevailing wage for "service work":[2]

> The Director of [SCDC] may enter into contracts with private sector entities that would allow for inmate labor to be provided for prison industry service work. The use of such inmate labor may not result in the displacement of employed workers within the local region in which work is being performed. Service work is defined as any work such as repair, replacement of original manufactured items, packaging, sorting, labeling, or similar work that is not original equipment manufacturing. *The department may negotiate the wage to be paid for inmate labor provided under prison industry service work contracts, and such wages may be less than the prevailing wage for work of a similar nature in the private sector.*

H. 3687, Appropriation Bill 2001–2002, Part IB § 37.31 (Act No. 66, 2001 S.C. Acts 738) (emphasis added). The legislature enacted identical, or nearly identical, provisos for each following fiscal year until the 2007–2008 fiscal year. On August 1, 2007, section 24–1–295 of the South Carolina Code, which codified the language in the provisos, became effective.[3]

On August 3, 2001, SCDC denied Williams' Step 2 grievance. Williams' appeal to the ALC was dismissed for lack of

---

2. The 2001–2002 budget was enacted on July 20, 2001, for the fiscal year beginning July 1, 2001.

3. H. 4878, Appropriation Bill 2002–2003, Part IB § 37.25 (Act No. 289, 2002 S.C. Acts 3145); H. 3749, Appropriation Bill 2003–2004, Part IB § 37.23 (Act No. 91, 2003 S.C. Acts 1437); H. 4925, Appropriation Bill 2004–2005, Part IB § 37.23 (Act No. 248, 2004 S.C. Acts 2574); H. 3716, Appropriation Bill 2005–2006, Part IB § 37.22 (Act No. 115, 2005 S.C. Acts 1324); H. 4810, Appropriation Bill 2006–2007, Part IB § 37.22 (2006 Act No. 397); Act No. 68, 2007 S.C. Acts 288. The legislature sustained the Governor's veto of H. 3620, Appropriation Bill 2007–2008, Part IB § 37.21, the stated reason for the veto being, "the language is no longer necessary after I signed S. 182, the Prison Industries legislation. This proviso conflicts with the statutory changes and is unneeded." Therefore, from July 1, 2007 to August 1, 2007,

subject matter jurisdiction. Williams later filed a Summons and Complaint against SCDC and WTI in circuit court, seeking the prevailing wage and other related relief and complaining about unsafe working conditions. On July 1, 2002, Williams filed an amended Summons and Complaint adding numerous plaintiffs and defendants and invoking the South Carolina Tort Claims Act, S.C.Code Ann. §§ 15–78–10 to –220 (2005 and Supp. 2015). On February 12, 2003, Williams filed a second amended complaint in the form of a class action pursuant to Rule 23, SCRCP.

While Williams' class action was pending in circuit court, Inmates filed their respective Step 1 Inmate Grievance Forms with SCDC on various dates in late September 2004, requesting the prevailing wage for their labor from 1999 through June 30, 2001, and the negotiated wage of $4.00 per hour beginning on July 1, 2001, the effective date of the first budget proviso permitting SCDC to pay participating inmates less than the prevailing wage. On October 28, 2004, Lieber's Warden denied several of these Step 1 grievances on the merits. On November 3, 2004, several Inmates filed their Step 2 Inmate Grievance Forms, challenging SCDC's denial of the requested relief. According to the parties, on this same date, the circuit court judge presiding over Williams' class action stayed SCDC's processing of Inmates' grievances.

On July 1, 2005, the circuit court filed an order dismissing Williams' class action and lifting the stay it had imposed on SCDC's processing of Inmates' grievances. However, Williams appealed the circuit court's order, and SCDC invoked the automatic stay set forth in Rule 225(a), SCACR to withhold further processing of Inmates' grievances. On February 25, 2007, our supreme court affirmed the circuit court's order, and the remittitur was filed with the Dorchester County Clerk of Court on March 22, 2007. *Williams v. S.C. Dep't of Corr.*, 372 S.C. 255, 257, 641 S.E.2d 885, 886 (2007).

On May 14, 2007, SCDC issued final decisions on Inmates' Step 2 Forms, basing its denial of relief on both the merits and the fifteen-day filing deadline set forth in paragraph 13.1 of Policy GA–01.12. Paragraph 13.1 states, in pertinent part: "If informal resolution is not possible, the grievant will com-

there existed no authorization for SCDC to pay participating inmates below the prevailing wage.

plete Form 10–5, Step 1 . . . and will submit the Form to *an employee designated by the Warden* . . . within 15 days of the alleged incident. *An inmate will submit a grievance within the time frames established in the policy.*"[4] On appeal, the ALC upheld SCDC's denial of Inmates' grievances on the ground that Inmates did not timely file their Step 1 grievances. This appeal followed.

## ISSUE ON APPEAL

Did SCDC's fifteen-day filing deadline apply to Inmates' grievances?[5]

## STANDARD OF REVIEW

■ Section 1–23–610(B) of the South Carolina Code (Supp. 2015) sets forth the standard of review when this court is sitting in review of a decision by the ALC on an appeal from an administrative agency. Here, there are no factual disputes. Rather, the issue on review involves a question of law. Therefore, our review of the ALC's decision is governed by item (d) of section 1–23–610(B), which allows this court to reverse the ALC's decision if it is affected by an error of law.

## LAW/ANALYSIS

■ Inmates argue the fifteen-day filing deadline did not apply to them because their grievances did not concern an "incident" but rather concerned SCDC "policies/procedures," which are exempt from the filing deadline pursuant to paragraph 13.9 of Policy GA–01.12. We agree.

---

4. SCDC applied the November 1, 2004 version of Policy GA–01.12 to Inmates' grievances, although presumably the August 1, 2002 version was in effect when Inmates filed their Step 1 grievances in September 2004 and when Lieber's Warden denied these Step 1 grievances on October 28, 2004. Nonetheless, the provisions concerning the filing deadline for Step 1 grievances are substantially the same in both versions. Therefore, to avoid confusion, we will reference the 2004 version of Policy GA–01.12 throughout this opinion.

5. Because we reverse the ALC's order on this ground alone, we need not reach the merits of Inmates' remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address the remaining issues on appeal when resolution of a prior issue is dispositive).

Paragraph 13.1 of Policy GA–01.12 requires an inmate to file a Step 1 Inmate Grievance Form within fifteen days of the alleged "incident." Policy GA–01.12 does not define the term "incident," but paragraph 13.9 provides for exceptions to the filing deadline:

13.9 Exceptions to the [fifteen] day time limit requirement *will* be made for grievances concerning *policies/procedures.* Exceptions *may* also be made for *incident grievances* by the Chief/designee, Inmate Grievance Branch, provided that documented reasonable cause can be demonstrated as to why the original time frame was not met, e.g., inmate physically unable to initiate grievance due to hospitalization, court appearance, etc. The waiver must be requested by the grievant.

(emphases added). In the present case, SCDC has indicated that the terms "policy" and "procedure" are not defined in any of its policies or relevant publications. However, a review of paragraph 7, entitled "**GRIEVABLE ISSUES**," is instructive:

The following issues will be considered **grievable**:

**7.1** Department policies/procedures, directives, or conditions [that] directly affect an inmate;

**7.2** Actions of a staff member toward an inmate;

**7.3** Actions of an inmate against another inmate;

**7.4** Inmate property complaints;

**7.5** **Disciplinary Hearing actions to appeal a conviction following an innocent plea, or to appeal any guilty verdict due to alleged technicalities or misinterpretation of evidence, or to appeal a sentence when the sanction imposed was allegedly not proportionate to the rules violation;** . . .

**7.6** **Any classification decision that directly affects an inmate's custody level; and** . . .

**7.7** *Calculation of sentence-related credits.*

■ Paragraph 7.1 (quoted above) includes the same reference to "policies/procedures" found in paragraph 13.9 as an exception to the fifteen-day deadline, i.e., "Exceptions to the [fifteen] day time limit requirement will be made for grievances concerning *policies/procedures.*" (emphasis added). Therefore, the words "policies/procedures" in paragraph 13.9 was meant to serve as shorthand for the language in para-

graph 7.1, i.e., "Department policies/procedures, directives, or conditions [that] directly affect an inmate." *Cf. Travelscape, LLC v. S.C. Dep't of Revenue,* 391 S.C. 89, 100, 705 S.E.2d 28, 34 (2011) ("As a general rule, 'identical words and phrases within the same statute should normally be given the same meaning.'") (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.,* 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007)); *id.* at 101, 705 S.E.2d at 34 ("[W]ords in a statute must be construed in context, and their meaning may be ascertained by reference to words associated with them in the statute."); *Murphy v. S.C. Dep't of Health & Envtl. Control,* 396 S.C. 633, 639, 723 S.E.2d 191, 195 (2012) (holding regulations are interpreted using the rules of statutory construction).[6]

It logically follows that the remaining items in paragraph 7, i.e., 7.2 through 7.7, were meant to serve as "incidents" for purposes of paragraphs 13.1 and 13.9. This is consistent with SCDC's proposed definition of "policies/procedures," which was adopted by the ALC:

> [T]he terms "policies" and "procedures" constitute approved guidelines for handling the agency's day-to-day operations as well as statements expressing the basic expectations of conduct for agency staff and inmates. More formally stated, the terms "policies" and "procedures" constitute agency directives deemed by the responsible agency officials as "necessary to preserve internal order and discipline, and to maintain institutional security in the prison."

Inmates' grievances naturally fall within this definition because SCDC has operated the prison industries service project as one of its day-to-day operations pursuant to guidelines and statements expressed in its contracts with prison industries sponsors, such as those in the WTI contract that (1) set the pay rate at $4.00 per hour per inmate, to be paid directly to SCDC and from which SCDC is to make certain deductions,

---

6. Although SCDC's statements concerning the inmate grievance system are within a document entitled "SCDC Policy/Procedure," they are "binding norms" and, thus, more like rules or regulations that may be interpreted using statutory construction rules than they are true policy statements. *See Home Health Serv., Inc. v. S.C. Tax Comm'n,* 312 S.C. 324, 328, 440 S.E.2d 375, 378 (1994) ("Whether a particular agency proceeding announces a rule or a general policy statement depends upon whether the agency action establishes a binding norm.").

(2) prohibit WTI from exposing inmates to environmental hazards, (3) establish the duties of the parties regarding screening, training, supervision, scheduling, removal and re-placement of inmate workers, (4) require WTI to provide adequate security, (5) provide for future renegotiation of the pay rate to reflect SCDC's increased overhead costs, (6) allow for the parties to create a bonus plan for inmates based on productivity and quality control, and (7) prohibit discrimination.

Further, the substance of Inmates' grievances challenges the specific pay rate in the WTI contract, rather than SCDC's act of giving notice of this rate to inmates, on the ground that the pay rate is less than the prevailing wage, a topic governed by statute and, thus, an expression of the legislature's policy on inmate pay.[7] *See* S.C.Code Ann. § 24–3–315 (2007) ("The director [of SCDC] must determine prior to using inmate labor in a prison industry project that it will not displace employed workers, that the locality does not have a surplus of available labor for the skills, crafts, or trades that would utilize inmate labor, and that the rates of pay and other conditions of employment are not less than those paid and provided for work of [a] similar nature in the locality in which the work is performed."); § 24–3–430(D) ("No inmate partici-pating in the [Prison Industries P]rogram may earn less than the prevailing wage for work of [a] similar nature in the private sector."); *see also* S.C.Code Ann. § 24–1–295 (Supp. 2015) ("[SCDC] may negotiate the wage to be paid for inmate labor provided under prison industry *service work* contracts and *export work* contracts, and these wages may be less than the prevailing wage for work of a similar nature in the private sector." (emphases added)). As SCDC is mandated to carry out these legislative policies, SCDC, in turn, expresses its own, more specific policies regarding pay rates and other working conditions for inmates in its contracts with prison industries sponsors pursuant to § 24–3–430(B) or § 24–1–295.

Moreover, the provisions of these contracts are enduring and have the same effect on numerous inmates. Therefore,

---

7. Approximately ninety-two of Inmates' grievances involve periods of work beginning prior to July 1, 2001, the effective date of the first budget proviso permitting SCDC to pay participating inmates less than the prevailing wage for "service work."

they cannot realistically be characterized as "incidents," which are temporally limited and rarely affect more than a few inmates. *Cf. Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 383, 537 S.E.2d 543, 548 (2000) ("In construing a statute, its words must be given their plain and ordinary meaning without resort to subtle or *forced* construction to limit or expand the statute's operation." (emphasis added)).

Based on the foregoing, the wage set forth in the WTI contract logically falls within "policies/procedures" as contemplated in paragraphs 7.1 and 13.9 of Policy GA–01.12. Therefore, SCDC's attempt to characterize Inmates' wage grievances as incident grievances was arbitrary and capricious. *Cf. Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 34–35, 766 S.E.2d 707, 718 (2014) ("We defer to an agency interpretation unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))).

## CONCLUSION

Accordingly, we reverse the ALC's decision and remand for the ALC's consideration of Inmates' grievances on the merits.

**REVERSED AND REMANDED.**

SHORT and MCDONALD, JJ., concur.