**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Joshua Cramer, Appellant,

v.

South Carolina Department of Corrections, Respondent.

Appellate Case No. 2014-002172

Appeal From The Administrative Law Court
Carolyn C. Matthews, Administrative Law Court Judge

Unpublished Opinion No. 2016-UP-392
Submitted April 1, 2016 – Filed August 3, 2016

**REVERSED AND REMANDED**

Joshua Cramer, pro se.

Lake Eric Summers, of Malone Thompson Summers &
Ott, LLC, of Columbia, for Respondent.

**PER CURIAM:** Joshua Cramer appeals an order from the Administrative Law
Court (ALC) arguing (1) the ALC erred in affirming the South Carolina
Department of Corrections' (SCDC) denial of Cramer's grievances for failure to
file his Step 1 Grievance within the Inmate Grievance System Policy's fifteen-day
deadline provided by SCDC Policy GA-01.12 paragraph 13.1, (2) SCDC's denial
of Cramer's grievance based on the fifteen-day deadline conflicts with SCDC

Policy GA-01.12 section 13.9, (3) SCDC erred in denying him immediate access to wages escrowed for his benefit pursuant to section 24-3-40(A)(5) and (B)(2) of the South Carolina Code (Supp. 2015) and section 24-3-315 of the South Carolina Code (2007), and (4) SCDC denied him a fair interest rate on wages escrowed for his benefit under section 24-3-40(A)(5).  We reverse and remand.[1]

Cramer is currently serving a life sentence without the possibility of parole at the Broad River Correctional Institution.  Between July 2005 and January 2010, Cramer participated in the prison industries service project operated by SCDC.  On April 26, 2007, Cramer filed a Step 1 Grievance alleging (1) he should be allowed immediate access to the portion of his wages from the prison industries service project that were placed in escrow as required by section 24-3-40(A)(5) because he was never going to be released from prison and keeping the money in escrow to be distributed at his death deprived him of a liberty interest and (2) he had a liberty interest in the amount of interest earned on the money in escrow and the interest rate had declined.  In its response, SCDC denied Cramer's claims, finding Cramer "exceeded any reasonable time frame associated with filing a grievance under the agency's Inmate Grievance System Policy" because he "filed [his] Step 1 [Grievance] nearly two (2) years after SCDC first paid [him] for [his] voluntary participation in the prison industries [service] project," which was also "nearly two (2) years after SCDC began applying the statutorily mandated deductions to [his] prison industries [service project] pay pursuant to [s]ection 24-3-40."  Additionally, SCDC found Cramer's allegations were without merit.  Cramer appealed SCDC's decision in a Step 2 Grievance.  He argued he was entitled to a distribution of the wages in his escrow account, asserted concerns about the interest rate on his escrow account, and contended SCDC erred in construing the fifteen-day deadline because his escrowed wages were wrongfully withheld daily, and therefore, the incident was ongoing.  SCDC reiterated its response to Cramer's Step 1 Grievance and denied his appeal.

In March 2014, Cramer appealed to the ALC arguing (1) SCDC erred in denying him immediate access to his escrowed wages, (2) SCDC erred in denying him a fair interest rate on his escrowed wages, and (3) SCDC's denial of his grievance "based on the 'fifteen[-]day deadline' [found in policy number GA-0.12 paragraph 13.1] conflicts with [SCDC] policy number GA-01.12 [paragraph] 13.[9]."  Cramer also argued his grievance was not an incident grievance but a policy and procedure grievance that was not limited to the fifteen-day deadline.  The ALC affirmed SCDC's decision, finding Cramer's wage claims were "incident" grievances and

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

subject to the Inmate Grievance System Policy fifteen-day deadline. The ALC did not address the merits of Cramer's appeal.

"Section 1-23-610 of the South Carolina Code (Supp. 20[15]) sets forth the standard of review when the court of appeals is sitting in review of a decision by the ALC on an appeal from an administrative agency." *S.C. Dep't of Corr. v. Mitchell*, 377 S.C. 256, 258, 659 S.E.2d 233, 234 (Ct. App. 2008). This court's "review of the administrative law judge's order must be confined to the record. The court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of fact." S.C. Code Ann. § 1-23-610(B). Under section 1-23-610(B)(d), the court of appeals "may reverse or modify the [ALC's] decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is . . . affected by other error of law."

The Inmate Grievance System, found in SCDC Policy GA-01.12, allows inmates to seek formal review of complaints. Guidance on how and when to submit a formal grievance is provided under SCDC Policy GA-01.12 paragraph 13 titled "Steps in the Grievance Process." Grievances are broken into two categories: "incident" grievances and "policies/procedures" grievances. Paragraph 13.1 addresses the timeframe for submitting an incident grievance; this section provides, "If informal resolution [of a grievance] is not possible, the grievant will complete Form 10-5, Step 1, which is located in common areas, . . . and will submit the Form to an employee designated by the Warden . . . within 15 days of the alleged incident." (italics omitted). Paragraph 13.9 addresses the timeframe for submitting a "policy/procedure" grievance; this section provides, "Exceptions to the 15 day time limit requirement *will* be made for grievances concerning policies/procedures." (emphasis added).

We find Cramer's grievance is a "policy/procedure" and SCDC's characterization of Cramer's grievance as an incident grievance was arbitrary and capricious. *Cf. Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 34-35, 766 S.E.2d 707, 718 (2014) ("We defer to an agency interpretation unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984))). Cramer's grievance stems from section 24-3-40(A)(5) and (B)(2) of the South Carolina Code. Section 24-3-40(A)(5) states the director of SCDC, or the local detention or correctional facility manager, shall deduct ten percent of an inmate's wages to "be held in an interest bearing escrow account for the benefit of the prisoner." Section 24-3-40(B)(2) provides "[a] prisoner serving life in prison or sentenced to death

shall be given the option of having his escrowed wages included in his estate or distributed to the persons or entities of his choice."

This court recently decided *Ackerman v. South Carolina Department of Corrections*, 415 S.C. 412, 782 S.E.2d 757 (Ct. App. 2016), holding an inmate grievance challenging the specific pay rate in a contract with a prison industries sponsor was a policy/procedure grievance rather than an incident grievance. As in *Ackerman*, the substance of Cramer's grievance, which involves the distribution of his wages, is "a topic governed by statute and, thus, an expression of the legislature's policy," and "SCDC is mandated to carry out these legislative policies." *Id.* at 420, 782 S.E.2d at 761-62. "SCDC, in turn, expresses its own, more specific policies" regarding inmate wage distribution. *Id.* at 420, 782 S.E.2d at 762. Furthermore, Cramer's grievance "naturally fall[s] within [SCDC's] definition [of the terms 'policies' and 'procedures'] because SCDC has operated the prison industries service project as one of its day-to-day operations." *Id.* at 419, 782 S.E.2d at 761.

Additionally, Cramer's grievance cannot "realistically be characterized as [an] 'incident[],' which [is] temporally limited and rarely affect[s] more than a few inmates" because many inmates are serving life sentences and any of those inmates who participate in the prison industries service project will be in the same situation as Cramer. *See id.* at 421, 782 S.E.2d at 762 (finding the provisions of the inmates contracts were enduring and had the same effect on numerous inmates and therefore, could not "realistically be characterized as 'incidents,' which are temporally limited and rarely affect more than a few inmates").

Accordingly, the decision of the ALC is reversed and this case is remanded for the ALC's consideration of Cramer's grievance on the merits.[2]

**REVERSED AND REMANDED.**

**HUFF, KONDUROS, and GEATHERS, JJ., concur.**

---

[2] We do not address Cramer's remaining issues because we are remanding these issues to the ALC.