GREGORY, Chief Judge:
Patrick Booker, an inmate of the South Carolina Department of Corrections *536 (“SCDC”), brought a claim under 42 U.S.C. § 1983 alleging that he received a disciplinary charge in retaliation for filing a prison grievance. The district court found that Booker’s First Amendment right to be free from retaliation for filing a grievance was not clearly established, and it accordingly held that Appellees were entitled to qualified immunity and granted summary judgment in their favor. Because we find that Booker’s right was clearly established, we vacate the judgment and remand to the district court for further proceedings.
I.
Booker mailed a legal document to the Dorchester County Sherriffs Office on November 8, 2010, but it was returned to him at Lieber Correctional Institution because he had not affixed the mailing address. Booker inspected the letter and noticed a slit along the length of the envelope. According to Booker, the sergeant who returned the mail to him indicated that the “confidentiality of its contents had been compromised.” J.A. 18.
After learning this information, Booker initiated the prison grievance process by submitting a form known as a Request to Staff Member (“RSM”). The SCDC grievance process consists of several steps. Inmates must first try to “informally resolve a complaint” by either discussing their complaint with the appropriate supervisor or, as Booker did, by submitting an RSM form. J.A. 52. If informal resolution proves unsuccessful, inmates may submit a formal grievance to the Inmate Grievance Coordinator within fifteen days of the incident (known as a Step 1 grievance), with appeals to the SCDC’s central Grievance Branch (a Step 2 grievance) and eventually to the South Carolina Administrative Law Court. The SCDC has a policy document titled “Inmate Grievance System,” which provides that “[n]o inmate will be subjected to reprisal, retaliation, harassment, or disciplinary action for filing a grievance or participating in the resolution of a grievance.” J.A. 57-58.
Booker’s RSM, which he addressed to the “Mailroom,” made its way to Appellee Sylvia Jones, the mailroom supervisor at Lieber. J.A. 83-84. In his RSM, Booker objected to the prison’s opening of and tampering with his legal mail and added that he intended to pursue civil and criminal remedies if he found his mail meddled with again.
Jones contends that in addition to filing the RSM, Booker verbally threatened her regarding the mail incident — a fact that Booker disputes. What is undisputed is that shortly after receiving the RSM, Jones submitted an “Incident Report” recommending that Booker be charged with an “809” disciplinary offense of “Threatening to Inflict Harm on/Assaulting an Employee and/or Members of the Public.” J.A. 71, 84. An 809 offense is a Level 2 Disciplinary Offense, which carries penalties of disciplinary detention, loss of accrued good behavior time, and loss of visitation, employment, television, and other privileges. J.A. 67-68, 71. A hearing was later held on the disciplinary charge, at which Booker was found not guilty because he had made “legal threats” against Jones, not physical threats. J.A. 77.
In June 2012, Booker, proceeding pro se, filed suit in state court against Jones, SCDC, and two other SCDC employees, Ann Sheppard and Thierry Nettles. Booker alleged, along with other state and federal claims, that Jones filed a false disciplinary charge against him in retaliation for his submission of the RSM form. J.A. 18-19, 32. Booker identified the First Amendment as the source of this claim: “Sylvia Jones, Ann Sheppard and Thierry Nettles are liable unto Plaintiff in their *537 individual/personal capacity for violating Plaintiffs First Amendment right to free speech and expression, and to be free from ■wrongful interference and unlawful retaliation for the exercise of such right.” J.A. 32. Appellees removed the ease to federal court and later moved for summary judgment.
In its order granting the motion, the district court explained that a First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiffs protected activity and the defendant’s conduct. J.A. 115 (citing Suarez Corp. Indus. v. McGratu, 202 F.3d 676, 686 (4th Cir. 2000)). The court assumed, without deciding, that Booker had engaged in constitutionally protected activity when he filed the RSM form. J.A. 113. The district court still granted Appellees’ motion, however, finding Booker had failed to produce sufficient evidence that he had suffered “adverse action as a result of the 809 [disciplinary] charge.” J.A. 114.
In the first appeal, this Court vacated the district court’s summary judgment order as to Booker’s claim that Jones violated his First Amendment rights by submitting a disciplinary charge in retaliation for the grievance Booker submitted. Booker v. S. Carolina Dep’t of Corr., 583 Fed.Appx. 43, 45 (4th Cir. 2014). Limiting our review to the second element, as the district court did, we concluded that Booker had “produced sufficient evidence that Jones’ conduct would likely deter prisoners of ordinary firmness from exercising their First Amendment rights.” Id. at 44. We added that the evidence, viewed in the light most favorable to Booker, supported a finding that the disciplinary charge filed against Booker was false. Id. We did not decide whether Booker had engaged in constitutionally protected conduct when he filed the RSM form. Id. at 44-45.
On remand, Appellees again moved for summary judgment. The district court did not reach the merits of Booker’s retaliation claim this time, instead determining that Appellees were protected by qualified immunity. The district court specifically found that a “prison inmate’s free speech right to submit internal grievances” was not clearly established. J.A. 136. The court acknowledged that the right was “perhaps sufficiently recognized in other federal circuits.” J.A. 136. But because “there has been no published case law from the Supreme Court of the United States, the Fourth Circuit Court of Appeals, or the Supreme Court of South Carolina that squarely establishes” the right at issue, it concluded the right was not clearly established. J.A. 136-37. Accordingly, the court held that Appellees deserved qualified immunity on the retaliation claim and therefore granted their, motion for summary judgment.
Booker timely noticed this appeal.
II.
We review de novo a grant of summary judgment on the basis of qualified immunity. Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012). Summary judgment is proper “only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party,” there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); see also Fed. R. Civ. P. 56(a).
Qualified immunity protects officials “who commit constitutional violations *538 but who, in light of clearly established law, could reasonably believe that their actions were lawful.” Id. The doctrine weighs two important values — “the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In conducting the qualified immunity analysis, “our first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct.” Winfield v. Bass, 106 F.3d 525, 530 (4th Cir. 1997) (en banc). We then engage in a two-step inquiry, asking “whether a constitutional violation occurred” and “whether the right violated was clearly established” at the time of the official’s conduct. Melgar ex rel. Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010). Courts have discretion to take these steps in either order. Pearson, 555 U.S. at 236, 129 S.Ct. 808.
The “clearly established” prong lies at the heart of this case — we do not evaluate the merits of Booker’s claim. A “right is clearly established only if its contours are sufficiently clear that ‘a reasonable official would understand that what he is doing violates that right.’” Carroll v. Carman, — U.S. -, 135 S.Ct. 348, 350, 190 L.Ed.2d 311 (2014) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The unlawfulness of the official’s conduct must be “apparent” in “light of pre-existing law.” Anderson, 483 U.S. at 640, 107 S.Ct. 3034. To be clearly established, “existing precedent must have placed the statutory or constitutional question beyond debate.” Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).
We must consider not only “specifically adjudicated rights,” but also “those manifestly included within more general applications of the core constitutional principles invoked.” Wall v. Wade, 741 F.3d 492, 502-03 (4th Cir. 2014) (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)). In other words, defendants “can still be on notice that their conduct violates established law even in novel factual circumstances,” so long as the law provided “fair warning” that their conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
In conducting the clearly established analysis, we first examine “cases of controlling authority in [this] jurisdiction,” Amaechi v. West, 237 F.3d 356, 363 (4th Cir. 2001) (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999))—that is, “decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose,” Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999)).[1] We “ordinarily” need not look any further than decisions from these courts. Id. But when “there are no such decisions from courts of *539 controlling authority, we may look to ‘a consensus of cases of persuasive authority’ from other jurisdictions, if such exists.” Id. at 280 (emphasis added) (quoting Wilson, 526 U.S. at 617, 119 S.Ct. 1692).
The Supreme Court, in an opinion authored by Chief Justice Rehnquist, articulated that courts may rely on “a consensus of cases of persuasive authority” to determine whether a “reasonable officer could not have believed that his actions were lawful.” Wilson, 526 U.S. at 617, 119 S.Ct. 1692. Since Wilson, the Supreme Court has reaffirmed that “qualified immunity is lost when plaintiffs point either to ‘cases of controlling authority in their jurisdiction at the time of the incident’ or to ‘a consensus of cases of persuasive authority.’ ” Ashcroft, 563 U.S. at 742, 131 S.Ct. 2074 (quoting Wilson, 526 U.S. at 617, 119 S.Ct. 1692).[2] And in evaluating whether a right is clearly established in a given circuit, the Supreme Court has looked to precedent from other circuits. See, e.g., Pearson, 555 U.S. at 244, 129 S.Ct. 808 (considering decisions from “three Federal Courts of Appeals” and noting officers “were entitled to rely on these cases, even though their own Federal Circuit had not yet ruled on” constitutional issue); Brosseau v. Haugen, 543 U.S. 194, 200-01, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (discussing Sixth, Seventh, and Eighth Circuit cases in finding right not clearly established in Ninth Circuit).
III.
A.
Before we apply these rules to the instant case, we must first define the right at the “appropriate level of specificity,” Wilson, 526 U.S. at 615, 119 S.Ct. 1692, keeping in mind that the Supreme Court has cautioned against defining the right at too “high [a] level of generality,” Ashcroft, 563 U.S. at 742, 131 S.Ct. 2074. See also id. (noting, for example, the “general proposition” that whether “an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established”).
At the outset, we preempt a possible point of confusion — Booker did not allege in his complaint that he has an absolute right to file prison grievances pursuant to the First Amendment. Rather, Booker alleged that he has a First Amendment right to be free from retaliation when he does file a grievance pursuant to an existing grievance procedure.[3] See J.A. 32.
*540 More particularly, Booker asserts that this right is rooted in the First Amendment’s Petition Clause, which guarantees individuals the right “to petition the Government for a redress of grievances.” U.S. Const, amend. I. Booker contends that an inmate’s right to petition is violated when he is retaliated against for filing a grievance. Appellees suggest in passing that we should not examine whether the right was established under the Petition Clause, apparently referencing the district court’s refusal to consider the right to petition. With minimal explanation, the district court limited its analysis to the Free Speech Clause, stating that an “inmate’s free speech right to submit internal grievances” was the right “pressed by the Plaintiff throughout this litigation.” J.A. 136.
The district court should not have limited itself so. To the extent the court considered only the free speech right because Booker mentioned that clause in his pro se complaint, we note that Booker also generally alleged a violation of the First Amendment, J.A. 31, and that courts are obligated to “liberally construe[ ]” pro se complaints, “however inartfully pleaded,” Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).[4] Booker also directly argued to the district court that “[ijnstead of analyzing the first element to a First Amendment retaliation claim in the context of [ ] public employee speech, the [magistrate judge] should have realized that the facts in this case related more to a deprivation of Plaintiffs right to petition the government.” PL’s Objections to Report and Recommendation, Dist. Ct. ECF No. 160, at 5 (May 6, 2015). Booker’s detailed factual allegations and his reference to the First Amendment provide a more-than-sufficient basis for us to analyze whether the right was clearly established under the Petition Clause.
B.
The clearly established inquiry asks whether the state of the law gave a reasonable prison official “fair warning” that retaliating against an inmate who files a prison grievance was unconstitutional.
It is “well established” in this Circuit that a “public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right.” Trulock, 275 F.3d at 405. Thus, if an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional. The pertinent question in this appeal, then, is whether it was clearly established that an inmate exercises a First Amendment right to petition for redress of grievances when he files a prison grievance. Framed differently, we must determine whether it was clearly established that an inmate’s right to petition is violated when he is retaliated against for filing a grievance.
As noted, the first step is to consider cases of controlling authority in this jurisdiction. See Owens, 372 F.3d at 279-80. We thus start with Supreme Court, Fourth *541 Circuit, and Supreme Court of South Carolina decisions that have addressed the asserted right. The parties do not contest the district court’s finding that no decision from the United States Supreme Court or Supreme Court of South Carolina explicitly discusses the right. The parties do dispute, however, whether our Court has addressed it. Booker contends that the Fourth Circuit has not discussed in a published opinion whether inmates have a First Amendment right to be free from retaliation for filing grievances. For their part, Appellees appear to agree that this Court has never explicitly considered this right. Nevertheless, they contend that our decision in Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), resolves the clearly established analysis in their favor.[5] They understand Adams to suggest that inmates do not exercise any constitutional right (under the First Amendment or otherwise) when they file a prison grievance. See Appellees’ Br. 13-14; see also id. at 17 (arguing that inmates exercise First Amendment right to petition by accessing the courts, not by filing grievances).
Adams does not stand for- — or even imply — that proposition, however. There, an inmate claimed that when he requested protective custody, the prison officials retaliated against him by, among other things, denying him access to the prison’s grievance process. Adams, 40 F.3d at 75. On appeal, the plaintiff “reeast[ ] his protective custody request as an exercise of a ‘right to inform’ prison officials of dangerous conditions” incident to the Eighth Amendment. Id. In other words, Adams asserted he had a constitutional right “to a particular grievance procedure.” Id. This Court held that the plaintiff had not exercised any such right by requesting protective custody. Id. We went on to state that “the Constitution creates no entitlement to grievance procedures or access to any such procedure.” Id. (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (per curiam)).
Adams establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example. But Adams is entirely silent on the issue in this ease — whether an inmate’s First Amendment right is violated when he is retaliated against for submitting a grievance pursuant to an existing grievance procedure. That a prison is not required under the Constitution to provide access to a grievance process does not mean that prison officials who retaliate against inmates for filing grievances do not violate the Constitution.
As the Eighth Circuit explained nearly three decades ago, there is a very critical distinction between the right of access or entitlement to a grievance process and the right to be free from retaliation for filing a grievance:
Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit. That the Constitution does not obligate the state *542 to establish a grievance 'procedure is, we believe, of no consequence here....
Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (emphasis added). Indeed, the Eighth Circuit recognizes that (1) an inmate possesses a First Amendment right to be free from retaliation for filing a grievance, id., while simultaneously recognizing that (2) an inmate does not have a due process “liberty interest in access to [a grievance] procedure,” Flick, 932 F.2d at 729.
The Eighth Circuit is not alone in finding that although inmates do not have a constitutional entitlement to and/or due process interest in accessing a grievance procedure, they have a First Amendment right to be free from retaliation when they do file. Compare Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (finding no liberty interest in grievance procedure), with Bibbs v. Early, 541 F.3d 267, 272 (5th Cir. 2008) (recognizing First Amendment retaliation right); compare Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (finding inmates have “no legitimate claim of entitlement to a grievance procedure”), with Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (recognizing First Amendment retaliation right); compare Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (holding that inmates have “no constitutionally-protected liberty interest in access to [grievance] procedure”), with Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) (recognizing First Amendment retaliation right). Like our sister circuits, we see no inconsistency between these distinct legal principles.
In short, Adams concerns whether inmates have a constitutional entitlement to or liberty interest in accessing grievance procedures. It says nothing about whether a prison official violates an inmate’s First Amendment rights by retaliating against the inmate for submitting a grievance. Therefore, contrary to Appellees’ suggestion, Adams does not speak to the right at issue. As such, neither party has cited cases from courts of controlling authority — the Supreme Court, this Court, or the Supreme Court of South Carolina — that explicitly address an inmate’s First Amendment right to be free from retaliation for filing a prison grievance.
To be sure, as discussed at oral argument, there are unpublished opinions in this Circuit that reference Adams and/or directly address the right in question. One such decision misconstrued Adams to preclude an inmate from bringing a First Amendment claim alleging retaliation in response to his verbal complaints to prison officials. See Daye v. Rubenstein, 417 Fed. Appx. 317, 319 (4th Cir. 2011). Others properly applied Adams. See, e.g., Cameron v. Bonney, 523 Fed.Appx. 969, 970 (4th Cir. 2013) (applying Adams to reject inmate’s claim that his constitutional rights were violated when he was denied access to a grievance form). And still more unpublished decisions found that inmates can bring a First Amendment claim alleging retaliation for filing a grievance.[6] See, e.g., Wright v. Vitale, 937 F.2d 604, 1991 WL 127597, at *1 (4th Cir. 1991) (unpublished table opinion); Gullet v. Wilt, 869 F.2d 593, 1989 WL 14614, at *2 (4th Cir. 1989) (unpublished table opinion). But because these *543 unpublished opinions “are not even regarded as binding precedent in our circuit,” as this Court sitting en banc has explained, they “cannot be considered in deciding whether particular conduct violated clearly established law for purposes of adjudging entitlement to qualified immunity.” Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996) (en banc).
We therefore agree with the district court’s conclusion that no published decision from the Supreme Court, this Court, or the Supreme Court of South Carolina squarely addresses whether filing a grievance is protected First Amendment conduct.
The district court, after determining there were no binding cases that squarely established the specific First Amendment right, concluded that the right was not clearly established. J.A. 137. But the clearly established inquiry was not complete: as this Court has stated, and as Booker recognizes, the “absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity.” Owens, 372 F.3d at 279. The district court failed to consider whether, despite the lack of directly on-point, binding authority, the right was clearly established based on general constitutional principles or a consensus of persuasive authority. We now proceed to that task.
C.
In the absence of controlling authority that specifically adjudicates the right in question, a right may still be clearly established in one of two ways. A right may be clearly established if “a general constitutional rule already identified in the deci-sional law [ ] applies] with obvious clarity to the specific conduct in question.” Hope, 536 U.S. at 741, 122 S.Ct. 2508 (quoting United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)); see also Owens, 372 F.3d at 279 (stating that a right may be clearly established if it is “manifestly apparent from broader applications of the constitutional premise in question”). A right may also be clearly established based on a “ ‘consensus of cases of persuasive authority1 from other jurisdictions.” Owens, 372 F.3d at 280 (quoting Wilson, 526 U.S. at 617, 119 S.Ct. 1692). Here, Booker argues that his First Amendment right was clearly established in both ways.
Arguably, the prohibition on retaliating against inmates for filing grievances was obviously unconstitutional given longstanding principles articulated in controlling authority. It is beyond dispute that prison officials cannot retaliate against inmates for exercising a constitutional right. Tru-lock, 275 F.3d at 405. And Booker presents a logical and compelling argument that, in light of binding Supreme Court precedent, he exercised his constitutional right to petition the government for redress of grievances when he filed an administrative grievance seeking redress for what he believed was the improper handling of his legal mail.[7]
*544 In addition to Supreme Court precedent, this Court has long held that prison officials may not retaliate against prisoners for exercising their right to access the courts, Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978), which is a component of the right to petition for redress of grievances, Hudson v. Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Given the close relationship between an inmate filing a grievance and filing a lawsuit — indeed, the former is generally a prerequisite for the latter — our jurisprudence provided a strong signal that officials may not retaliate against inmates for filing grievances.
Regardless of whether Booker’s right was obvious or “manifestly apparent” from broader principles in the decisional law, we find that it was clearly established based on a robust “consensus of persuasive authority.” The Second, Sixth, Seventh, Eighth, Ninth, Eleventh, and D.C. Circuits have all recognized in published decisions that inmates possess a right, grounded in the First Amendment’s Petition Clause, to be free from retaliation in response to filing a prison grievance. The Second Circuit, for instance, recognized that an inmate can bring a First Amendment right to petition claim when prison officials “intentionally file[ ] false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation of alleged incidents of inmate abuse at the prison.” Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988). The court later recognized the right in the context of retaliation against inmates for filing grievances. Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (“An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.”) (citing Franco, 854 F.2d at 589-90). The Sixth, Seventh, Eighth, Ninth, Eleventh, and D.C. Circuits have likewise recognized that inmates possess a First Amendment petition right to be free from retaliation for filing grievances. Herron v. Harrison, 203 F.3d 410, 414 (6th Cir. 2000) (recognizing claim where inmate alleged that prison officials “impermissibly retaliated against him for exercising his First Amendment right to file grievances and petition the courts for redress”); Powers v. Snyder, 484 F.3d 929, 933 (7th Cir. 2007) (recognizing claim where inmate alleged he was retaliated against for “filing grievances against the prison” and noting “[s]uch retaliation violates a prisoner’s right, founded on the First Amendment, to petition government for the redress of grievances”); Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (holding that “filing of a disciplinary charge becomes actionable if done in retaliation for the inmate’s filing of a grievance” and stating that such conduct “strikes at the heart of an inmate’s constitutional right to seek redress of grievances”); Brodheim v. Cry, 584 F.3d 1262, 1266, 1269-72 (9th Cir. 2009) (recognizing First Amendment petition right where inmate alleged retaliation for filing grievances); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) (“First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance.... ”); Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 584-85 (D.C. Cir. 2002) (recognizing that prisoners “undoubtedly” exercise First Amendment petition right when filing grievances and stating that prison “officials may not *545 retaliate against prisoners for filing grievances”).
Even more, the Third, Fifth, and Tenth Circuits have recognized an inmate’s right to be free from retaliation for filing a grievance under the First Amendment (albeit without referencing a particular clause). Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (“[Inmate’s] allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment.”); Bibbs v. Early, 541 F.3d 267, 271 (5th Cir. 2008) (recognizing First Amendment retaliation claim where official filed a disciplinary report “following an inmate’s filing of a grievance”); Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991) (“[T]he district court erred in dismissing plaintiffs claim that that he was denied particular job assignments or was transferred from one job to another in retaliation for filing administrative grievances or the present civil rights action. Again, although plaintiff has no right to a job or to any particular assignment, prison officials cannot punish plaintiff for exercising his first amendment rights.... ”).
Given the decisions from nearly every court of appeals, we are compelled to conclude that Booker’s right to file a prison grievance free from retaliation was clearly established under the First Amendment. Consistent with fundamental constitutional principles and common sense, these courts have had little difficulty concluding that prison officials violate the First Amendment by retaliating against inmates for filing grievances. Rarely will there be such an overwhelming consensus of authority recognizing that specific conduct is viola-tive of a constitutional right. The unanimity among our sister circuits demonstrates that the constitutional question is “beyond debate,” and therefore we find that the right at issue was clearly established.
Appellees do not dispute this consensus among the federal appellate courts. They instead argue that there is a “body of case law within the Fourth Circuit that specifically holds prisoners have no constitutional right to file a grievance.” Appellees’ Br. 13. This “body of case law” consists of three published district court opinions from the Western District of Virginia, two of which were issued by the same district judge and do not even mention the First Amendment. See id. at 14. All three decisions erroneously rely on Adams in rejecting an inmate’s claim that he was retaliated against for filing’ grievances. See, e.g., Brown v. Angelone, 938 F.Supp. 340, 346-47 (W.D. Va. 1996).
These district court decisions do not alter our conclusion that the right was clearly established. First, it is unclear whether we should include district court opinions in the balancing of “persuasive authority.” As the Supreme Court has remarked, “[m]any Courts of Appeals [] decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity.” Camreta, 563 U.S. at 709 n.7, 131 S.Ct. 2020. The Court went on, “[otherwise said, district court decisions — unlike those from the courts of appeals — do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity.” Id. Given that published district court opinions, like unpublished opinions from our Court, have no precedential value, it follows that we should not consider them. But even if we classify published district court opinions as relevant “persuasive authority,” they are “no match for the Circuit precedents.” Hope, 536 U.S. at 747, 122 S.Ct. 2508. When weighed against the circuit precedents, there is still an overwhelming “consensus of persuasive author *546 ity” that inmates possess a First Amendment right to be free from retaliation for filing a grievance.
Our “conclusion that ‘a reasonable person would have known,’ Harlow [v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)], of the violation is buttressed by” the South Carolina Department of Correction’s internal policies. Hope, 536 U.S. at 744, 122 S.Ct. 2508. Although officials “do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision,” Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Supreme Court has analyzed prison regulations in combination with case law to determine whether an individual had fair warning, see Hope, 536 U.S. at 741-45, 122 S.Ct. 2508 (relying on binding precedent, Alabama Department of Corrections regulation, and Department of Justice report in finding conduct violated clearly established right); see also Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013) (stating that “regulations governing the conduct of correctional officers are also relevant in determining whether an inmate’s right was clearly established”) (quoting Treats v. Morgan, 308 F.3d 868, 875 (8th Cir. 2002) (citing Hope, 536 U.S. at 743-744, 122 S.Ct. 2508)); Okin v. Vill. of Cornwall-On-Hudson Police Dep’t, 577 F.3d 415, 433-34 (2d Cir. 2009).
Here, the SCDC’s detailed policy document concerning the “Inmate Grievance System”[8] expressly provides that “[n]o inmate will be subjected to reprisal, retaliation, harassment, or disciplinary action for filing a grievance or participating in the resolution of a grievance.” J.A. 57-58. The record further indicates that this prohibition was communicated to prison officials: “As part of the Department orientation program, all newly hired employees will receive written and/or oral explanations of the Department’s grievance policy/procedure by a representative of the Inmate Grievance Branch.” J.A. 57. Again, the fundamental inquiry for purposes of qualified immunity is whether a reasonable official in Jones’s position had “fair warning” that the alleged conduct was unconstitutional. Hope, 536 U.S. at 741, 122 S.Ct. 2508. The unequivocal language of SCDC’s own policies provides additional support for our finding that Jones had such warning here.
In sum, given the authority discussed above, we conclude that a reasonable prison official had fair warning that retaliating against an inmate who filed a prison grievance was unlawful. Because an inmate’s First Amendment right to be free from retaliation for filing a grievance was clearly established, we find that Appellees are not entitled to qualified immunity on that basis and therefore the district court erred in granting their motion for summary judgment.
IV.
For the foregoing reasons, the judgment of the district court is vacated, and we remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

. District court opinions, on the other hand, are not decisions of "controlling authority." As the Supreme Court recently explained in an opinion concerning qualified immunity, “[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.” Camreta v. Greene, 563 U.S. 692, 709 n.7, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d] (3d ed. 2011)). It is for this reason that "[mjany Courts of Appeals [ ] decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity.” Id. (citing Kalka v. Hawk, 215 F.3d 90, 100 (D.C. Cir. 2000) (Tatel, J., concurring in part and concurring in judgment) (collecting cases)).

. Following the Supreme Court's lead, several of our sister circuits, like us, have recognized that courts may consider decisions from other circuits in the absence of binding precedent. Werner v. Wall, 836 F.3d 751, 762 n.28 (7th Cir. 2016) (“We are not alone in looking to trends in the decisional law of other jurisdictions once we are satisfied that controlling precedent in our own circuit does not clearly establish a particular legal right.”) (citing Cox v. Glanz, 800 F.3d 1231, 1247 (10th Cir. 2015); Morgan v. Swanson, 659 F.3d 359, 372 (5th Cir. 2011); Bame v. Dillard, 637 F.3d 380, 384 (D.C. Cir. 2011); Wilson v. City of Boston, 421 F.3d 45, 56 (1st Cir. 2005); Turner v. Ark. Ins. Dep’t, 297 F.3d 751, 755 (8th Cir. 2002); Trulock v. Freeh, 275 F.3d 391, 407 (4th Cir. 2001)).

. Appellees quibble with the right at issue. They contend that the alleged retaliation was in response to Booker’s submission of an RSM form — not a grievance. This is simply a matter of semantics. Inmates in the SCDC submit RSM forms to express grievances and initiate the grievance process, and this Court previously classified Booker’s submission of the RSM form as "Booker's grievance,” Booker, 583 Fed.Appx. at 44. The Ninth Circuit rejected a near-identical distinction in Brodheim v. Cry, where the defendants suggested that an inmate could not bring a First Amendment retaliation claim because the alleged retaliation was in response to the inmate’s filing of a document called an “interview request form.” 584 F.3d 1262, 1271 n.4 (9th Cir. 2009). The court noted that the interview *540 request form was "part of the grievance process” and held that the "applicability of the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint.” Id.

. Indeed, courts have liberally construed complaints even where pro se plaintiffs do not reference any source of law, see Hodge v. Gansler, 547 Fed.Appx. 209, 210 n.1 (4th Cir. 2013) (construing claim for "racial profiling” as equal protection claim) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)), or where they cite the wrong part of the Constitution, see Ambrose v. Roeckeman, 749 F.3d 615, 618 (7th Cir. 2014)."

. It is worth noting the change in Appellees’ position. Earlier in the litigation, prior to the first appeal, they agreed with Booker that "it has been clearly established that a prison official may not retaliate against an inmate for ... complaining about a prison official’s conduct.” Defs.’ Reply to Pl.’s Response in Opp. to Mot. for S.J., Dist. Ct. ECF No. 48, at 8 (Jan. 17, 2013) (emphasis added).

. We have also found, in an unreported decision, that an inmate could bring a claim alleging he was transferred in retaliation for sending á letter to the mother of a fellow inmate who was severely beaten. Moore v. Bennette, 97 Fed.Appx. 405, 406 (4th Cir. 2004). The retaliation claim was later acknowledged in a published decision, see Moore v. Bennette, 517 F.3d 717, 724 (4th Cir. 2008), and eventually evaluated by the district court as a First Amendment retaliation claim, see Moore v. Bennett, 777 F.Supp.2d 969, 982-85 (E.D.N.C. 2011).

. The Supreme Court has long held that prisoners "retain the constitutional right to petition the government for the redress of grievances.” Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). This right "advance[s] personal expression,” Borough of Duryea v. Guarnieri, 564 U.S. 379, 388, 131 S.Ct. 2488, 180 L.Ed.2d 408 (2011), and "extends to all departments of the Government,” including administrative agencies, California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Read together, Booker suggests it is clear that an inmate exercises the petition right when he files a grievance. The Supreme Court has further stated that prisoners retain "protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause *544 of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.” Sandin v. Conner, 515 U.S. 472, 487 n.11, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (emphasis added).

. We treat the "Inmate Grievance System” document as a prison regulation. As the South Carolina Court of Appeals recently explained with respect to this exact document, "[a]l-though SCDC's statements concerning the inmate grievance system are within a document entitled 'SCDC Policy/Procedure,’ they are 'binding norms’ and, thus, more like rules or regulations ... than they are true policy statements.” Ackerman v. S. Carolina Dep't of Corr., 415 S.C. 412, 782 S.E.2d 757, 761 n.6 (S.C. Ct. App. 2016). And this Court has previously classified SCDC policy statements as regulations. See Hines v. S. Carolina Dep’t of Corr., 148 F.3d 353, 358 (4th Cir. 1998) (classifying SCDC "Grooming Policy” as "neutral and generally applicable regulation”).