**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 20-1906**

———————

ANGELA L. LAWHON, as Administrator of the Estate of Joshua L. Lawhon,

   Plaintiff – Appellee,

  v.

ALEXANDER MAYES,

   Defendant – Appellant,

  and

JOHN EDWARDS; LASHAUN TURNER; CHRISTOPHER TENLEY,

   Defendants.

———————

**No. 20-1907**

———————

ANGELA L. LAWHON, as Administrator of the Estate of Joshua L. Lawhon,

   Plaintiff – Appellee,

  v.

CHRISTOPHER TENLEY,

   Defendant – Appellant,

  and

JOHN EDWARDS; LASHAUN TURNER; ALEXANDER MAYES,

Defendants.

_____

**No. 20-1908**

_____

ANGELA L. LAWHON, as Administrator of the Estate of Joshua L. Lawhon,

Plaintiff – Appellee,

v.

JOHN EDWARDS; LASHAUN TURNER,

Defendants – Appellants,

and

ALEXANDER MAYES; CHRISTOPHER TENLEY,

Defendants,

------------------------------

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS,

Amicus Supporting Appellee.

_____

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:19-cv-00924-HEH)

_____

Argued:  October 28, 2021                    Decided:  November 15, 2021

_____

Before MOTZ, KING, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Motz wrote the opinion, in which Judge King and Judge Harris joined.

_____

**ARGUED:** Mark Charles Nanavati, SINNOTT, NUCKOLS & LOGAN, P.C., Midlothian, Virginia; Leslie A. Winneberger, HARMAN CLAYTOR CORRIGAN & WELLMAN, Glen Allen, Virginia; John Anthony Conrad, CONRAD FIRM, Richmond, Virginia, for Appellants. Isaac Abraham McBeth, HALPERIN LAW CENTER, Glen Allen, Virginia, for Appellee. **ON BRIEF:** David P. Corrigan, John P. Dunnigan, HARMAN CLAYTOR CORRIGAN & WELLMAN, Richmond, Virginia, for Appellant Christopher Tenley. G. Christopher Jones, Jr., SINNOTT, NUCKOLS & LOGAN, P.C., Midlothian, Virginia, for Appellants. Jonathan E. Halperin, HALPERIN LAW CENTER, Glen Allen, Virginia, for Appellee. Kwaku A. Akowuah, Mark P. Guerrera, Justin A. Benson, Joshua Moore, Alaric R. Smith, Washington, D.C., Lindsay N. Walter, SIDLEY AUSTIN LLP, Los Angeles, California, for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit.

_____

3

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal arises from a tragic incident that led to the death of Joshua Lawhon, an unarmed mentally ill man. Invoking 42 U.S.C. § 1983 and Virginia state law, Lawhon's mother, as administrator of his estate, brought this action against the police officers and paramedics whose assertedly improper actions cost her son his life. Defendants moved to dismiss the case on the grounds of qualified immunity and state law immunity. The district court refused to do so regarding Defendants' conduct after they secured Lawhon in handcuffs and the Defendants now appeal. We affirm on the basis of its well-reasoned opinion.

## I.

Ms. Lawhon alleges the following in her complaint.

On January 16, 2018, two officers from the Richmond City Police Department responded to a call from Joshua Lawhon's roommate, Shaunna Tunstall. Tunstall expressed concern for Lawhon's well-being because he had fallen and injured himself. Lawhon had a history of paranoid schizophrenia and informed the officers he had taken too much of a certain medication that day. The police officers urged him to go to the hospital voluntarily for evaluation, but he refused. When two paramedics arrived, they asked Lawhon a series of questions to evaluate his state of mind. He answered the questions correctly but became increasingly agitated. When the paramedics prepared to leave, Tunstall urged them to take Lawhon and expressed a concern that he could kill himself if he remained at home. However, she did not convey any fear that he could pose a danger to others.

4

According to the complaint, the police officers and paramedics then "carried out a ruse" by pretending to allow Lawhon to go find the cigarette he had requested. As Lawhon walked toward the other room to do so, Officer Edwards grabbed him from behind, forced him into the prone position — on his stomach with his hands behind his back — and with the assistance of the other police officer and the two paramedics, handcuffed him.

The Defendants then applied varying degrees of force to his body while Lawhon remained handcuffed in the prone position for nearly six minutes, with his face pushed into a pillow on the floor for most of that time. During the last three minutes, Lawhon was motionless and silent. When the Defendants finally rolled Lawhon off his stomach and onto his back, he remained unresponsive. It was later determined that he suffered "irreversible hypoxic brain injury due to cardiac arrest and/or asphyxia." Two days later, he was declared brain dead.

## II.

"We review de novo the denial of a motion to dismiss based on qualified immunity, accepting as true the facts alleged in the complaint and viewing them in the light most favorable to the plaintiff." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). For this reason, "when [a qualified immunity defense is] asserted at this early stage in the proceedings, the defense faces a formidable hurdle and is usually not successful." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (internal quotation marks omitted). In addition to the facts as stated in the complaint, the district court correctly considered the body camera footage in deciding whether to grant the motions to dismiss.

In determining whether officers enjoy qualified immunity, we must determine 1) whether the plaintiff has plausibly alleged a violation of a constitutional right and 2) whether the constitutional right at issue was clearly established, i.e., whether every reasonable officer would have known that the conduct violated a clearly established right. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009). Here, as the district court held, given the force the officers and paramedics continued to employ after securing Lawhon in handcuffs, the plaintiff successfully made out a violation of the constitutional right to be free from excessive force.

All of the factors courts use to review excessive force claims under the Fourth Amendment weigh in favor of this conclusion. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Lawhon had committed no crime, once outnumbered and handcuffed he could not have posed any risk to the safety of the officers or others, and viewing the evidence in the light most favorable to Lawhon, he did not actively resist or attempt to evade the officers.

In addition to applying the *Graham* factors, we also take into account the severity of the injuries in our determination of whether officers used excessive force. *See Jones v. Buchanan*, 325 F.3d 520, 527, 530–31 (4th Cir. 2003). Here, Lawhon suffered the most severe injury possible — death. There is no doubt that continuing to apply force to a secured unarmed man, to effectuate a seizure for which the individual's own benefit provides the only justification, constitutes excessive force in violation of the Fourth Amendment. *See Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 901 (4th Cir. 2016).

III.

We next turn to whether that constitutional right was clearly established in January 2018. "For a right to be clearly established, its contours must be sufficiently clear such that a reasonable official would have understood that what he is doing violates that right." *Owens*, 767 F.3d at 398 (internal quotation marks omitted). We first look to controlling authority "[b]ut when there are no such decisions from courts of controlling authority, we may look to a consensus of cases of persuasive authority from other jurisdictions, if such exists." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017) (internal quotation marks omitted).[1]

Controlling authority at the time clearly established that officers could not continue to apply force to an already-restrained person who posed no threat. Indeed, this court has repeatedly "denied qualified immunity to officers who used excessive force against individuals who had not committed any crimes, were secured in handcuffs, and posed no threat to the officers or others." *Yates v. Terry*, 817 F.3d 877, 887–88 (4th Cir. 2016); *see also Est. of Jones ex rel. Jones v. City of Martinsburg*, 961 F.3d 661, 668 (4th Cir. 2020),

---

[1] Because there is controlling authority on point, there is no need to look to persuasive authority. However, we note that prior to January 2018, a number of our sister circuits held that the specific conduct of creating asphyxiating conditions by applying force to a person's body while holding them in the prone position constitutes excessive force in violation of the Fourth Amendment. *See e.g.*, *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) ("Even without particular Supreme Court and First Circuit cases directly on point, it was clearly established in September 2012 that exerting significant, continued force on a person's back 'while that [person] is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.' *Weigel v. Broad,* 544 F.3d 1143, 1155 (10th Cir. 2008) (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004)). At least four circuits had announced this constitutional rule before the events in question here.").

*as amended* (June 10, 2020); *Bailey v. Kennedy*, 349 F.3d 731, 744–45 (4th Cir. 2003); *Buchanan*, 325 F.3d at 529. Officers in January 2018 had abundant notice that they could not continue to use force against a restrained individual in these circumstances.[2] Here, the Defendants did not cease the use of force even after Lawhon became motionless and unresponsive. In January 2018, "[u]nsurprisingly, it was clearly established [] that officers may not use force against an incapacitated suspect." *Est. of Jones*, 961 F.3d at 669.

IV.

The district court also correctly denied the motions to dismiss the state law battery claims on the basis of state law immunity. The officer-Defendants raise state sovereign immunity and good faith immunity as defenses to Lawhon's state law claims. However, as the district court recognized, Virginia state sovereign immunity does not cover intentional torts such as battery. *See Lawhon v. Edwards*, 477 F. Supp. 3d 428, 450 n.18 (E.D. Va. 2020). And Virginia's good faith immunity defense requires a showing of a good faith belief in the lawfulness of one's actions. *See id*. at 451. At this stage, it is uncertain whether the officers can show they had a good faith belief in the lawfulness of their conduct.

The paramedic-Defendants similarly raise a good faith immunity defense under Virginia's Good Samaritan statute. However, as the district court determined, "this statute

---

[2] As the district court noted, the existence of Richmond City Police Department training materials that emphasize the specific risk of sudden death in custody due at least in part to positional asphyxia "amplifies" this conclusion. The Richmond training materials instruct officers to "get the subject off his/her stomach as soon after handcuffing as circumstances allow."

only shields those who 'in good faith render[] emergency care or assistance.'" *Id*. The complaint asserts that the paramedics "failed" to provide Lawhon with emergency care or assistance. Thus, the statute cannot immunize the paramedics at this stage of the litigation. "The parallel state law claim[s] of . . . battery [are] subsumed within the federal excessive force claim and so go[] forward as well." *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).

## V.

Accordingly, on the basis of its well-reasoned opinion, the judgment of the district court is

*AFFIRMED.*